

**U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 5, 2013**

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CHAPTER 11 |
| KLAAS TALSMA<br>D/B/A KLAAS TALSMA DAIRY<br>D/B/A FRISIA FARMS,<br>FRISIA FARMS, INC.,<br>FRISIA HARTLEY, LLC, AND<br>FRISIA WEST, LLC,<br>       DEBTORS. | § § § § § § § § § § | CASE NO. 10-43790-DML-11<br>CASE NO. 10-43791-DML-11<br>CASE NO. 10-43792-DML-11<br>CASE NO. 11-40900-DML-11<br><br>JOINTLY ADMINISTERED UNDER<br>CASE NO. 10-43790-DML-11 |
| WILLEMINA JACOBA DE BOER,<br>       PLAINTIFF,<br><br>v.<br><br>KLAAS TALSMA,<br>       DEFENDANT. | § § § § § § § § § § | ADVERSARY<br><br>CASE NO. 12-4059 |

**MEMORANDUM OPINION**

Before the court is the *Second Amended Complaint to Determine Dischargeability of Debt Under 11 U.S.C. §§* [sic] *523(a)(15)* (the "Complaint") filed by Plaintiff Willemina Jacoba De Boer. The court held a hearing on the Complaint on March 28, 2013 (the "Hearing"). In light of the parties' joint stipulation to the facts restated below,[1] De Boer and Talsma submitted supplemental briefs arguing solely the issues of law raised in the Complaint.

The court exercises core jurisdiction over the Adversary pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7001(6) and 7052.

**I. BACKGROUND**

De Boer and Talsma divorced in 2006. The divorce was finalized through an Agreed Final Decree of Divorce (the "Divorce Decree") signed by De Boer and Talsma and approved by the District Court of the 266th Judicial District of Erath County, Texas on October 12, 2006. The Divorce Decree obligated Talsma to pay to De Boer:[2] (1) $100,000.00 by December 31, 2008 (the "2008 Obligation") and (2) $2 million by May 1, 2015 (the "2015 Obligation").

On June 1, 2010 (the "Petition Date"), Talsma filed a petition for relief under chapter 11 of the Bankruptcy Code (the "Code").[3,4] As of the Petition Date, Talsma owed $15,000.00 to De

---

[1] *See* Stipulated Facts at Adv. Docket No. 27. "Adv. Docket No." shall hereinafter refer to the corresponding docket entry in the above-captioned adversary proceeding (the "Adversary").

[2] The Divorce Decree set out the division of the entire marital estate, but only the two referenced payments are before the court.

[3] Talsma, Frisia Farms, Inc., Frisia Hartley, LLC and Frisia West, LLC (collectively, the "Debtor") are four related entities engaged in dairy farming. Frisia Farms, Inc. owns dairy cows. Frisia Hartley, LLC raises heifers in Hartley County, Texas. Frisia West, LLC owns real property and equipment in Hartley County, Texas on which Frisia Hartley, LLC operates its dairy and conducts farming operations. Talsma cares for and milks the grown cows in Hico, Texas.
  Each entity of the Debtor filed a separate petition seeking relief under chapter 11 of the Code. Talsma, Frisia Farms, Inc., and Frisia Hartley, LLC filed their petitions on June 1, 2010. Frisia West, LLC filed its petition on February 18, 2011. The court entered orders directing joint administration of the four cases. Case Docket Nos. 46

2

Boer under the 2008 Obligation and the entire $2 million under the 2015 Obligation. Talsma filed his Schedule E and listed De Boer as having an undisputed, non-contingent, liquidated claim in the amount of $2,015,000.00. Docket no. 79. De Boer, with the assistance of her divorce attorney, filed a proof of claim (the "Claim") indicating that the Claim was a priority claim as a domestic support obligation under section 507(a)(1). The Debtor did not object to the Claim.

In December 2010, the Debtor filed its initial Joint Plan of Reorganization and Joint Disclosure Statement. Docket no. 366. Under this initial Joint Plan, the Debtor proposed to pay De Boer $1.7 million in 120 monthly payments under the plan. Thereafter, the Debtor filed three amended plans and disclosure statements over the next six months. In the second and third amended plans, Debtor specifically identified the Claim as a "Domestic Support Obligation within the meaning of § 507(a)(1)" but which did not otherwise alter the treatment of the Claim. Docket nos. 484 & 531. De Boer signed and filed her ballot in favor of the Third Amended Plan (the "Plan"), including the treatment of her Claim, in May 2011. Ex. 26 to Stip. Facts, Adv. Docket no. 27. On the ballot, De Boer wrote that the value of her claim was "$2,000,000." *Id.*

Despite receiving notice of all hearings related to the Debtor's plans and disclosure statements, De Boer never filed objections to any of the plans, disclosure statements, or her proposed treatment under the related documents. This court entered its *Order Confirming Third Amended Joint Plan of Reorganization, as Modified, Filed by [the Debtor]* on June 8, 2011 (the "Confirmation Order").

The Confirmation Order states:

---

and 489 ("Docket no." shall hereinafter refer to the corresponding docket entry in the above-captioned bankruptcy case (the "Case")).

[4] 11 U.S.C. § 101 *et seq*. All "section" references are to the Code in its present form unless otherwise noted.

> X. Domestic Support (11 U.S.C. § 1129(a)(14)). In the ordinary course of its business, the Debtor, Klaas Talsma, had obligations with respect to domestic support, but has provided for such in Class 19, and said class accepted the Plan. . . .
>
> 5. Pursuant to 11 USC § 1141, except as provided in the Third Amended Joint Plan or in this [Confirmation Order], the Debtors are discharged of all preconfirmation debts, to the extent set forth in Sec. 1141(d).

Docket no. 576. No party in interest appealed the Confirmation Order and this court has not entered a discharge order in favor of Talsma. Since beginning payments in July 2011, Talsma has paid De Boer under the terms of the Plan and is current with his obligations under the Plan.

## II. DISCUSSION

The issue before the court is whether an individual debtor in a chapter 11 bankruptcy may discharge a domestic support obligation debt, which is excepted from discharge under the Code, when a creditor participates in the bankruptcy proceedings by filing a proof of claim, does not raise an objection to its treatment under a proposed plan and subsequently votes in favor of the plan, which the court then confirms simultaneously with a discharge.

De Boer asserts that the Claim is not dischargeable, that the Plan did not act as a settlement of the Claim, and that her vote for the Plan is irrelevant to dischargeability. Talsma argues that the Plan reduced his liability on the Claim to $1.7 million and that the doctrines of claim preclusion and judicial estoppel prevent De Boer from arguing that the Plan did not reduce the Claim. For the reasons put forth below, Talsma's Plan is binding only as to the treatment of the allowed amount of the Claim because domestic support obligations are not dischargeable in a bankruptcy court.

A. <u>Dischargeability</u>

Section 1141 provides: "A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title." Section

4

523 excepts from discharge various types of debts, including debts for a domestic support obligation or other debts to a former spouse arising from a divorce decree. However, section 1141 also provides in subsection (d)(1): "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation. . ." The court is thus faced with a conundrum: does Code section 1141 prevent the court from discharging a debt that is excepted from discharge within the section if such claim was purportedly reduced in the confirmed Plan?

The exception to discharge for domestic support obligations in an individual case exists to provide broad protection to debtors' dependents. *See generally* 4 COLLIER ON BANKRUPTCY ¶ 523.11 (16th ed.). This narrowly tailored protection overrides the more general policy of construing exceptions narrowly to protect the debtor's fresh start. *Id.* Under chapter 11, whether the nature of the domestic support obligation is nominally "support" or is of another kind but still arising out of a marital relationship, is irrelevant to dischargeability – both types of debts are excepted.[5] Congress has recognized that states employ more diverse methods to create domestic support obligations than simply alimony and support payments. *In re Crosswhite*, 148 F.3d 879, 887 (7th Cir. 1998). "Property settlement arrangements are considered important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic wellbeing." *Id.*

---

[5] As a preliminary matter, the style of the Complaint characterizes the Claim as excepted from discharge under Code section 523(a)(15), but the parties referred to both that exception and section 523(a)(5) as applicable to this case. Subsection 523(a)(5) excepts domestic support obligations, and subsection (a)(15) excepts other obligations arising out of marital relationship. There were more prominent differences between the two prior to 2005, but now "the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence." 4 COLLIER ON BANKRUPTCY ¶ 523.11[1] (16th ed.); *see also* 4 COLLIER ON BANKRUPTCY ¶ 523.23 (16th ed.). The court finds no distinction between the two exceptions that would affect its analysis.

As to the practical implications of the exception to discharge, the court is sensitive to the legislative wisdom of both the protection afforded to obligations arising from divorce settlements and to the flexibility and finality that a confirmation order offers to a debtor. Allowing a former spouse to negotiate the reduction of a domestic support obligation may often further the goal of providing a fresh start to the debtor spouse without drastically impacting the creditor spouse. Conversely, such a permissive approach would increase pressure on creditor spouses to agree to reduce their claims, even when such a reduction might seriously impair the obligee-spouse's livelihood. Fortunately, congress has provided guidance with respect to the extent to which chapter 11 debtors may modify their domestic support obligations: a plan may only defer payment or satisfy the claim in full at the plan's effective date. 11 U.S.C. §§ 1129(a)(9)(B). The Code contemplates no other treatment options for domestic support obligations in the plans of chapter 11 debtors.

Both parties argue that *United Student Aid Funds v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367 (2010) supports their position. Espinosa was a chapter 13 debtor with educational loan debt which he proposed to repay in part (principal only, not interest) through his plan. *Id.* at 1373-74.[6] Chapter 13 of the Code contains a provision to discharge "all debts provided for by the plan." 11 U.S.C. § 1328(a). Notwithstanding section 523(a)(8), which excepts student loan debts from discharge absent a finding of undue hardship, the bankruptcy court confirmed Espinosa's plan. *Espinosa*, 130 S.Ct. at 1374. On appeal, the Supreme Court unanimously affirmed the bankruptcy court's confirmation order despite the reduction in student loan debts. *Id.* The Court held that the bankruptcy court made a legal error when it confirmed a plan that reduced a debt excepted from discharge; nevertheless, the bankruptcy court's confirmation order remained

---

[6] Such an attempt to discharge debts without the proper procedural antecedents is commonly referred to as a "Discharge by Declaration."

enforceable and the debt was discharged because the student loan creditor had notice of the error and failed to object or timely appeal. *Id.* Further, the Court held that the bankruptcy court had at least arguable jurisdiction to discharge student loan debts, even without a hearing to determine the required "undue hardship,"[7] because the exception to discharge for student loans is not unconditional. *Id.* The Supreme Court explicitly reserved judgment on the question of whether a plan provision would be void if it discharged debts that are not dischargeable under any circumstances,[8] leaving the matter for lower courts to decide. *See id* at 1379, n.10.

Following *Espinosa*, the Eleventh Circuit Court of Appeals applied the Supreme Court's logic to domestic support obligations. *Fla. Dept. of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073 (11th Cir. 2011). In that case, the Florida Department of Revenue (the "FDR") filed a proof of claim on a domestic support obligation including principal and accrued interest, but only included documentation to support the principal portion of the claim. *Id.* at 1080. Diaz objected to the proof of claim based on its insufficient documentation and after FDR failed to respond, the bankruptcy court allowed only the principal amount of the claim, disregarding the accrued interest to which FDR was also entitled. *Id.* The bankruptcy court confirmed Diaz's plan and Diaz completed his obligations thereunder, resulting in a discharge of all debts paid under the plan. *Id.* at 1080-81. After Diaz's case was closed, FDR attempted to collect on the unpaid pre-petition portions of its claim and post-petition accrued interest. *Id.* at 1081.

---

[7] "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt[,] unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for an [educational benefit or loan] incurred by a debtor who is an individual." 11 U.S.C. § 523(a)(8).

[8] At least one commentator has looked to *Arbuagh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) for guidance and concluded that while the bankruptcy court has jurisdiction to discharge a student debt, "a bankruptcy court order discharging, for example, domestic-support obligations (unlike one discharging student loan debt) is arguably void under Fed. R. Civ. P. 60(b)(4)." George Klidonas, *Are Nondischargeability Provisions Jurisdictional? The Effect of United Student Aid Funds v. Espinosa on Nondischargeable Debts*, 29-JUN AM. BANKR. INST. J. 22, 71 (2010).

The Eleventh Circuit concluded that a creditor state agency attempting to collect on a delinquent domestic support obligation was not in violation of a discharge injunction when the agency attempted to collect unpaid portions of its claim after discharge and the conclusion of the debtor's plan. *Id.* at 1090. The court differentiated between disallowance of the claim and dischargeability of the debt. *Id.* "Thus, if a creditor holds a [domestic support obligation] debt, then whether the bankruptcy court disallows all, part, or even none of that creditor's claim has no bearing on whether any portion of the debt is discharged." *Id.* Instead, the court held that the law does not permit discharge of any portion of a domestic support claim. *Id.* (citing *Espinosa*, 130 S.Ct. at 1379, n.10). The Eleventh Circuit subsequently extended its holding to Chapter 11 cases to the extent that the dispute "did not hinge on any procedural difference between Chapter 11 and Chapter 13." *Fla. Dept. of Revenue v. Davis (In re Davis)*, 481 F. App'x 492, 494 (11th Cir. 2012).

Here, unlike the student loan debt in *Espinosa*, the domestic support obligation is not dischargeable under any circumstances.[9] A complaint to determine dischargeability of a domestic support obligation may be filed by any creditor at any time. FED. R. BANKR. P. 4007. A determination of the dischargeability of a debt must take the form of an adversary proceeding. FED. R. BANKR. P. 4007(e), 7001(6). De Boer did so in filing this Complaint and the court finds that Talsma's debt to De Boer stemming from the Divorce Decree is not dischargeable in whole or in part under section 1141(d). *See Espinosa*, 130 S.Ct. at 1379, n.10.

---

[9] *Compare* 11 U.S.C. § 523(a)(8) (creating a general exception to discharge for educational loans, but qualifying the exception in cases where the debtor can show undue hardship), *with* 11 U.S.C. § 523(a)(5) and (15) (creating unqualified exceptions to discharge for domestic support obligations and other obligations stemming from a divorce decree).

Talsma makes several arguments in favor of reducing the debt notwithstanding the court's finding that *Espinosa* prevents a bankruptcy court from discharging a domestic support obligation. These arguments are each addressed below, and each is resolved in favor of De Boer.

B. Effect of Confirmation

Talsma first argues that De Boer agreed to a reduction in the Claim by accepting the Plan and failing to object to her treatment therein. Talsma argues that De Boer had numerous opportunities during the case to object to her treatment under the Plan or to reject it, but did not do so. De Boer asserts that the Plan is simply an agreement to defer payments on Talsma's support obligation.

    1. *Applicability of* Espinosa *and Progeny*

*Espinosa* and the Eleventh Circuit cases are factually different from the case before the court. The creditor in *Espinosa* failed to object to a plan which proposed to repay only the principal on its *educational* loans, failed to respond to a notice from the trustee that the plan proposed only to repay a portion of the claim, and failed to take action until several years after the confirmation of the plan. *Espinosa*, 130 S.Ct. at 1376. Indeed, *Espinosa* dealt primarily with whether the confirmation order was rendered jurisdictionally void under Federal Rule of Civil Procedure 60(b)(4) and less with the threshold question of whether a plan might properly discharge a debt excepted under § 523(a). *See id.* at 1377. In *Diaz*, a domestic support obligation creditor filed a proof of claim but then failed to respond to a debtor's objection.[10] *Diaz*, 647 F.3d

---

[10] Chapter 13 plans, unlike those under chapter 11, do not give rise to balloting in the way that chapter 11 plans do, so chapter 13 plans are presumed to be acceptable to creditors absent objection. 11 U.S.C. § 1325. Creditors on notice of a chapter 13 plan must actively express whatever displeasure they may have with the plan, usually by objecting to confirmation. 11 U.S.C. § 1324(a). This is distinct from chapter 11, under which a creditor may choose not to participate at all in the plan balloting process and will still be deemed to reject the plan if it impairs their claim. 11 U.S.C. § 1126(g).

9

at 1080. In *Davis*, the creditor neither filed a proof of claim nor did it vote for the plan.[11] *Davis,* 481 F. App'x at 493.

Conversely, De Boer affirmatively voted for the Plan and expressly noted on the ballot that her Claim was for more than the amount treated under the Plan. These differences require the court to examine whether De Boer's affirmative participation in the case, including her vote to accept the plan, had any effect on the nature of her Claim.

2. *Fifth Circuit Precedent Prior to* Espinosa

The facts before the court are closely analogous to *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir. 1985). There, a creditor with a statutory lien against a debtor filed a proof of claim in the debtor's chapter 13 bankruptcy. *Id.* at 549. In his proof of claim, the creditor designated his claim as a secured claim but the debtor listed the claim in his schedules and plan as an unsecured claim. *Id.* Secured creditors in a chapter 13 bankruptcy may elect to accept the plan using their proof of claim,[12] so the creditor accepted debtor's plan and added a typed statement: "Creditor objects to his claim being scheduled as unsecured." *Id.* The debtor never objected to the proof of claim and the creditor did not object to confirmation of the plan or to the allowance of claims and began receiving payments. *Id.* at 554. The Fifth Circuit held that the confirmation of the plan was error because it impermissibly classified the creditor's claim as unsecured, but also held that the plan's confirmation was not before the court on appeal. *Id.* at 555-56.

The court held that despite the plan's mistreatment of the claim,

---

[11] If the creditor had voted for the plan in the context of the chapter 11 plan in *Davis*, that might have been a "procedural difference between chapter 11 and chapter 13," the absence of which the Eleventh Circuit found dispositive. *Davis*, 481 F. App'x at 493.

[12] 11 U.S.C. § 1325(a)(5)(A). A creditor who accepts the plan forgoes alternatives, including (1) taking possession of the collateral from the debtor or (2) the guaranteed maintenance of the lien, regular payments to total the allowed amount of the claim and adequate assurance.

> It would be anomalous indeed were we to permit [the debtor] a windfall for his mischaracterization of [the creditor's] claim in the plan as unsecured. It is clear that [the creditor's] claim should have been deemed an allowed secured claim at the time of confirmation and treated as such in the plan if the plan was to be confirmed. That did not happen. It is also apparent that [the creditor] should have objected to confirmation, and, had his objection not been sustained, he should have appealed the order of confirmation. But that also did not happen. Nevertheless, [the creditor's] failure to interpose an objection to the plan or to appeal the confirmation order should not now be permitted to justify avoidance of a lien securing a claim that was originally deemed an allowed secured claim as a result of [the debtor's] failure to object to [the creditor's] timely filed proof of secured claim.

*Id.* A secured claim is not the same as a debt excepted from discharge, but the distinction does not require a different result in this case: a debtor may not use his plan and creditor inaction to cause the bankruptcy court to exceed its jurisdiction. *See Internal Revenue Serv. v. Taylor (In re Taylor)*, 132 F.3d 256, 261-262 (5th Cir. 1998).[13] Just as a secured creditor can stay outside the bankruptcy process and retain his rights, so too can a creditor in a chapter 11 case with a claim excepted from discharge. *See Simmons*, 765 F.2d at 556.

Although a secured debt may be reduced with the creditor's consent, the conduct of the creditor in *Simmons* (including failure to object and voting to accept the plan with an additional note that the plan was incorrect as to the nature of the claim) was not construed as consent. *Id.* Furthermore, "the filing of a plan does not generally initiate a contested matter with respect to a particular claim." *Taylor*, 132 F.3d at 261. The Fifth Circuit has emphasized a secured creditor's right to remain outside the bankruptcy process without fear that an order confirming a plan would adversely affect his or her claim. *Id.* (referring to *Simmons* and *Sun Finance Co. v.*

---

[13] "The same policies that weigh against a debtor relying upon a confirmed plan of reorganization to compromise a secured debt weigh in with equal force in the context of a § 6672 tax penalty." *Taylor*, 132 F.3d 256, 261-262 (referring to *Simmons* and its progeny*)*. If the same policies apply to secured claims and tax claims, both of which the bankruptcy court is given explicit authority to determine in sections 505 and 506 respectively, then those policies most certainly apply to domestic support obligations, which the bankruptcy court has been given no specific authority to determine. Additionally, both tax claims and domestic support obligations are specifically enumerated in section 523. *Taylor* thus makes explicit that nondischargeable debts, whether secured or listed in section 523, are equivalent in permitting a creditor to maintain nondischargeability regardless of its participation in the case.

11

*Howard (in re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992)). The exceptions to discharge in section 523 serve a similar function by providing a domestic support obligee reassurance that their claims will not be discharged in bankruptcy. Here, De Boer's actions in filing the Claim, choosing to withhold objections to the Plan, and voting for the Plan with a note about her misgivings do not change the nature of the Claim or affect its nondischargeability.[14]

The *Simmons* court also examined the effect of the plan provisions, and in particular focused on the section in the Code which permits a plan of reorganization to contain "any other appropriate provision not inconsistent with this title." *Simmons*, 765 F.2d at 558 (referring to 11 U.S.C. § 1322(a)(11)). The court noted that section 506(d) required a party to request a determination of the validity of a lien for the lien to become void. *Id.* Thus, to allow the lien to become void under the plan as the debtor requested would be inconsistent with the Code. *Id.* Chapter 11 contains a similar provision that plan provisions must not be inconsistent with the Code. 11 U.S.C. § 1123(b)(6). *Simmons* stands for the proposition that even when a creditor voted for a plan and forewent objections, a bankruptcy court's confirmation order and a plan itself may not be construed to be contrary to the Code. *See Simmons*, 765 F.2d at 559.

The Fifth Circuit cases examined above also accord with the Eleventh Circuit's opinion in *Diaz*.[15] Although the creditor in *Diaz* did not affirmatively participate in the bankruptcy proceedings beyond receiving notices, the court held that participation was irrelevant: "a child-support debt is '*not* dischargeable under *any* circumstances.'" *Diaz*, 647 F.3d. at 1089-90 (quoting *Espinosa*, 130 S.Ct. at 1379, n. 10) (emphasis in original). This court agrees that such

---

[14] Talsma urges to court to adopt the approach taken in *Martin v. United States (In re Martin)*, 150 B.R. 43 (Bankr. S. D. Cal. 1993), in which the court construed the IRS's consent to determination of its claim in the bankruptcy court as consent to permit discharge when the IRS failed to object to a reduction in its claim. The *Martin* court represents a minority approach that is not permissible in the Fifth Circuit. *See*, *e.g.*, *Taylor*, 132 F.3d at 261-62.

[15] *See Fla. Dept. of Revenue et. al. v. Diaz* (*In re Diaz*), 647 F.3d 1073 (11th Cir. 2011); *Simmons*, 765 F.2d 547; *Taylor*, 132 F.3d 256.

12

debts are not dischargeable under any circumstances, regardless of a creditor's actions. *Espinosa* may have altered the scope of *Simmons*,[16] but to the extent *Simmons* survives, it is extraordinarily similar factually to this dispute and suggests that De Boer's vote to accept the plan and failure to object to it is irrelevant to the nondischargeability of her Claim.

    3. *De Boer's Vote for the Plan Has No Preclusive Effect on Her Claim*

*Espinosa* cannot be construed broadly to permit a debtor to discharge any non-dischargeable debt. Instead, *Espinosa* must be construed narrowly only to permit debtors' unopposed plans to discharge debts that are at least theoretically dischargeable under the Code (like student loans).[17] Debtors cannot use their plans of reorganization to cause bankruptcy courts to perform acts for which those courts do not even have arguable authority.[18] Bankruptcy courts have no jurisdiction to discharge domestic support obligations.[19] A debtor's plan and the

---

[16] At least one Fifth Circuit bankruptcy court has expressed some doubt as to the continuing validity of *Simmons* and subsequent related Fifth Circuit holdings that predate *Espinosa*. *In re Stewart*, No. 03-18462, 2010 WL 3490976 (Bankr. E.D. La. Aug. 23, 2010) *rev'd and vacated sub nom. Countrywide Home Loans, Inc. v. Stewart et al.*, No. 10-3589, 2011 WL 1899820 (E.D. La. May 16, 2011). The district court reversed on the grounds that "the creditor was not sufficiently on [sic] placed on notice that the substance of its claim was placed at issue." *Countrywide*, 2011 WL 1899820 at *12. In sum, the district court found that *Espinosa* did not broadly provide for debtors to profit via their plans, even when creditors made mistakes, but instead decided that *Espinosa* was limited enough in scope that it did not entirely abrogate *Simmons* in the context of secured claims.

[17] Secured creditors' claims may be impaired in a chapter 11 plan under section 1123(b)(1). Section 1141(d)(1) permits discharge of secured debts and section 523 does not except them. Thus, it would appear that while *Espinosa* does not require a discharge on the facts before this court, it may not bar the "discharge by declaration" of secured debts in a chapter 11 plan, since such debts are dischargeable under certain specific circumstances, just as student debts are. However, even after *Espinosa*, at least one court has continued to interpret sections 502 and 506 to provide secured creditors protection that unopposed plans may not breach, citing *Simmons*. *See Countrywide Home Loans, Inc. v. Stewart et al.*, No. 10-3589, 2011 WL 1899820 at *12 (E.D. La. May 16, 2011). As previously discussed, because domestic support obligations may not be discharged under *any* circumstances, the persuasive authority of *Espinosa* is even more compelling in this context. If *Simmons* is still good law as to secured claims, its reasoning most certainly applies to domestic support obligations.

[18] *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 1377 (2010) (explaining that both parties conceded that the *Espinosa* bankruptcy court had jurisdiction to discharge a student loan debt because the Code provides for such a discharge in section 523(a)(8)).

[19] *See* 11 U.S.C. § 523(a)(5). Each court examined in this opinion that has attempted to discharge a domestic support obligation or other non-dischargeable debt in the wake of *Espinosa* has been reversed on appeal. *See In re Stewart*, No. 03-18462, 2010 WL 3490976 (Bankr. E.D. La. Aug. 23, 2010) *rev'd and vacated sub nom. Countrywide Home Loans, Inc. v. Stewart et al.*, No. 10-3589, 2011 WL 1899820 (E.D. La. May 16, 2011) (reversing discharge of

order confirming it may not be used as a vehicle to object to and subsequently reduce a domestic support obligation. The only method under the Code that permits such a reduction is the claim objection process, and even then, the effect is limited to the allowed amount to be treated in the plan, not as to the debtor's actual liability on the claim. *See* 11 U.S.C. § 520(a); *see also Diaz*, 647 F.3d at 1090. Neither Talsma nor any other party in interest objected to De Boer's claim at any time, and thus the claim was allowed in full, $2,015,000. Notwithstanding Talsma's Plan providing for less than that amount, the bankruptcy court has no jurisdiction to reduce his liability on a domestic support obligation.[20]

Section 1141(a) provides that the Plan binds both Talsma and De Boer to its terms. Although that binding effect does not amount to a discharge of the Claim, it does require both to honor the terms of the plan as written. Talsma has bound himself to pay De Boer $1,700,000 pursuant to the terms of the Plan.[21] De Boer may continue to have rights under the Claim outside of the bankruptcy court; such a determination is beyond the scope of this inquiry. To the extent De Boer has any rights under the Claim, they survive the bankruptcy. *See Taylor*, 132 F.3d at 261-62 (citing *Fein v. United States*, 22 F.3d 631, 633 (5th Cir. 1994); and *Grynberg v. United States (In re Grynberg)*, 986 F.2d 367, 370 (10th Cir. 1993)).

---

secured debt); *In re Diaz*, 452 B.R. 257 (Bankr. M.D. Fla. 2009), *rev'd by Fla. Dept. of Revenue et al. v. Diaz (In re Diaz)*. 647 F.3d 1073 (11th Cir. 2011) (reversing discharge of domestic support of obligation); *In re S. White Transp., Inc.*, 455 B.R. 509 (Bankr. S.D. Miss. 2011) *rev'd and remanded*, 473 B.R. 695 (S.D. Miss. 2012) (reversing bankruptcy court's finding that *Espinosa* permitted mere notice to secured claimant to amount to claimant's participation for purposes of § 1141(c) lien avoidance). *See also Smith v. Smith (In re Smith)*, Adv. No. 11-40050-JJR, 2011 WL 3679435 at *2 (Bankr. N.D. Ala. Aug. 23, 2011) (noting that the lower courts in *Diaz* were reversed for discharging domestic support obligations and that *Diaz* was now dispositive on the matter).

[20] 11 U.S.C. §§ 1141(d)(2), 523(a)(5). *See also Smith*, 2011 WL 3679435 at *2, n. 4 (concluding that under *Diaz*, "a discharge granted in a bankruptcy court within the Eleventh Circuit does not under any circumstances discharge the unpaid principal of, or interest on a domestic support obligation . . . and the bankruptcy court's determination of the amount of that obligation is not binding post-discharge in state court contempt proceedings.").

[21] Section 1129(a)(9)(B)(i) permits a debtor to defer payments under his plan to domestic support obligees, but not to reduce the amount. De Boer represented to the court in her briefing that she intends to collect her Claim under the plan during the period contemplated in its terms and then pursue the rest of her Claim at the conclusion of the Plan.

C. <u>Claim Preclusion (Res Judicata)</u>

Talsma argues in the alternative that De Boer's vote for the Plan and failure to object to the Confirmation Order should have a preclusive effect on the Complaint. However, Talsma is unable to satisfy the Fifth Circuit's claim preclusion analytic framework and thus, his argument is unpersuasive.

The analysis for claim preclusion in this case closely adheres to the reasoning above regarding the effect of plan confirmation. Nevertheless, claim preclusion (res judicata) involves a specific and distinct test that is well-established in the Fifth Circuit:

> For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.[22]

A bankruptcy court's confirmation order has preclusive effect when the elements of this test are met. *Chesnut*, 356 F. App'x at 736. Talsma urges the court to find that the Plan and the Confirmation Order precluded De Boer's Claim, that they limited his liability on the Claim to the allowed amount, and that the Confirmation Order should therefore discharge him of the remaining amount of the Claim. As explained above, the Plan and the Confirmation Order did not have the effect of reducing De Boer's Claim, because the bankruptcy court has no authority to reduce such a claim. As such, there was no final judgment on the merits of De Boer's claim. The Confirmation Order only decided what portion of the claim would be treated under the plan. Moreover, bankruptcy courts have no "competent jurisdiction" to discharge domestic support obligations. As a result, two of the elements of claim preclusion (res judicata) are not present in

---

[22] *Brown v. Chesnut (In re Chesnut)*, 356 F. App'x 732, 736 (5th Cir. 2009) (unpublished opinion) (quoting *Milsen v. City of Moss Point, Miss*, 701 F.2d 556, 559 (5th Cir. 1979)(en banc)); *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004).

this case. De Boer is not precluded from asserting that Talsma's nondischargeable obligation persists beyond the scope of his Plan.

Talsma's reliance on *Republic Supply Co. v. Shoaf* is misplaced. 815 F.2d 1046 (5th Cir. 1987). There, a confirmation order released all third-party guarantors from their obligations related to debts adjudicated within the plan, despite the language of section 524 which reads "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *Id.* at 1049-50 (quoting 11 U.S.C. § 524(e)). The Fifth Circuit upheld the confirmation order despite its conflict with the Code, because "the bankruptcy court determined that it had subject matter jurisdiction and that decision was not appealed." *Id.* at 1053.

Similar events occurred in this case; however, Talsma has not recognized subsequent developments in Fifth Circuit-claim-preclusion law that have created an exception to the holding in *Shoaf*. De Boer's situation falls within that exception. "*Simmons* represents a limited exception to the general rule of *Shoaf*" even though *Simmons* was decided first. *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992) (noting that *Shoaf*, decided after *Simmons*, did not even make reference to the latter case). The exception exists because the unsecured creditors in *Shoaf* did not enjoy any specific protection under the Code, while sections 502 and 506 provide specific protection for secured creditors like those in *Simmons* and *Howard*. *Id.* Section 523 provides absolute protection for domestic support obligees with claims against debtors in bankruptcy. Bankruptcy courts have no authority to violate that protection. As a result, the *Howard* exception to *Shoaf* prevents Talsma's Plan from having preclusive effect as to De Boer's Complaint.

D. <u>Judicial Estoppel</u>

Finally, Talsma argues that De Boer's vote for the Plan and failure to object to the Confirmation Order invoke the doctrine of judicial estoppel to prevent De Boer from causing the court to take inconsistent positions respecting De Boer's Claim. However, the court has not expressly adopted any position as to the nondischargeability of the Claim before this opinion. Thus, there is no need to invoke judicial estoppel. De Boer also had an argument in judicial estoppel, to wit, that Talsma should be prevented from asserting that the Claim was in the nature of anything other than a domestic support obligation. Talsma subsequently stipulated that the Claim was a domestic support obligation, rendering De Boer's argument moot.

"The doctrine of judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Wells Fargo Bank, N.A. v. Oparaji, (In re Oparaji)*, 698 F.3d 231, 235 (5th Cir. 2012) (internal quotations omitted). The doctrine is invoked when a party uses such inconsistent positions to obtain an unfair advantage before a court, though it should be emphasized that judicial estoppel protects the court from adopting the litigants' inconsistent opinions and thus protects the integrity of the court. *Id.* A defense of judicial estoppel generally consists of three components: (1) the party to be estopped has previously asserted a plainly inconsistent position, (2) a court accepted the previous position, and (3) the party did not act inadvertently. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). However, Talsma argues that judicial estoppel prevents De Boer from asserting that her claim was not reduced by operation of the Confirmation Order because she voted for the Plan and failed to object to the Confirmation Order.

As to the second element, it must be stressed that the court did not previously express any position related to the discharge of De Boer's Claim. The Confirmation Order simply granted Talsma a discharge "to the extent set forth in [section] 1141(d)." This court has no jurisdiction to

discharge the Claim. Regarding the first element, De Boer never asserted an inconsistent position. De Boer's vote to accept the Plan may not have risen to the level of judicial adoption of her position,[23] but even assuming that it does, voting to accept the Plan and its allowance of her Claim in the amount of $1.7 million cannot be construed as a vote in favor of discharging the remainder of the debt. To assume otherwise would be to assume that De Boer voted to cause the bankruptcy court to exceed its jurisdiction. The more reasonable inference is that De Boer voted for the allowed portion of her Claim to be paid under the Plan and to maintain her rights as to the disallowed portion. Thus, her vote was not "plainly inconsistent" with her position in the Complaint. Absent some other evidence that De Boer's position was "plainly inconsistent" with this court's present decision, judicial estoppel is inappropriate.

Judicial estoppel is not a rigid and formulaic application of clearly defined tests. *See New Hampshire v. Maine*, 532 U.S.742, 750 (2001). Instead, it is a flexible justification for courts to rely upon to protect a court against inconsistency in its decisions.[24] However, in the absence of a judicial adoption of a contrary position, there is no need to apply judicial estoppel. Here, as previously discussed, the court has not adopted the position that Talsma's debt to De Boer was reduced or discharged, despite Talsma's protestations that De Boer's intent was not innocent in voting to accept the plan and later arguing against the discharge of her Claim. Thus, the court will not apply judicial estoppel to prevent De Boer from asserting her Complaint.

**III. Conclusion**

---

[23] *See Phillips v. FDIC (In re Phillips)*, 124 B.R. 712, 720 (Bankr. W.D. Tex. 1991).

[24] *See generally*, K.M. Lewis & Paul M. Lopez, *Recent Developments in Estoppel and Preclusion Doctrines in Consumer Bankruptcy Cases, Volume I of II: Estoppel*, 66 OKLA. L. REV. __. (forthcoming Fall, 2013).

For the forgoing reasons, this court finds that Talsma's domestic support obligation to De Boer is not dischargeable. Counsel for De Boer is directed to prepare and submit a judgment accordingly.